Robert Paul JANNEY, Appellant,

v.

The STATE of Texas, Appellee.

No. 14–94–01262–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

Jan. 30, 1997.

## OPINION

LEE, Justice.

Appellant, Robert Paul Janney, pleaded not guilty before a jury to the offense of driving while intoxicated. TEX.REV.CIV. STAT. ANN. art. 6701*l*–1(b) (Vernon Supp.1994), *repealed by* Act of June 19, 1993, 73rd Leg., R.S., ch. 900, § 1.15, Tex. Gen. Law 3586, 3704 (current version at TEX. PENAL CODE ANN. § 49.04 (Vernon Supp.1997)). Appellant's trial ended when his request for a mistrial was granted. In a subsequent prosecution for the same offense, appellant pled guilty before the court, and the court assessed punishment at 180 days imprisonment in the Harris County Jail, probated for 180 days, eighty hours community service and a $200.00 fine. In his sole point of error, appellant claims the trial court erred in denying his special plea in bar. We affirm the judgment of the trial court.

## BACKGROUND AND PROCEDURAL STATUS

Appellant was arrested and charged with driving while intoxicated. In a pre-trial hearing, appellant filed a motion in limine concerning a prior DWI charge. The court granted the motion and stated, "[t]he State won't bring up or elicit any testimony from the witnesses [sic] anything about a prior DWI. If doors appear to be open, please approach the bench before going into anything like that."

At trial, appellant testified on his own behalf. On direct examination, he insisted he was not intoxicated the night he was arrested and explained that he refused the intoxilyzer test because he believed the test was unreliable. The State objected to appellant's testimony, and the trial court allowed the prosecutor to voir dire appellant concerning his qualifications. After questioning appellant, the State objected to any further testimony in which appellant offered an opinion concerning the reliability of intoxilyzer tests. The trial court overruled the State's objection and allowed appellant to testify that, based on his qualifications, he believed intoxilyzer tests were unreliable.

Robert R. Durbin, Houston, for appellant.

Keli Pool Roper, Houston, for appellee.

Before LEE, AMIDEI and EDELMAN, JJ.

During cross-examination, the prosecutor asked appellant, "Isn't it, in fact, true that you have taken an intoxilyzer test before?" Before appellant could answer, defense counsel objected, and the trial court excused the jury from the courtroom.

After the jury was retired, the prosecutor attempted to justify his question and recommended a jury instruction. He stated, in part:

> Your Honor, the witness has created an inference to the jury that he knows about an intoxilyzer through his work with NASA and everything. I merely want to find out whether or not this man has ever taken an intoxilyzer and found out if it's accurate as to his personal knowledge.... I will be glad to phrase [the question] as [referring to] his work at NASA. That's why I specifically left off ["]isn't it true in a prior instance with HPD you blew into an intoxilyzer.["] He's been testifying about an intoxilyzer and his knowledge of the workings and everything. I want to know if he's ever been subject to an intoxilyzer and how it worked for him.... Judge, I would suggest that you just tell the jurors, ["]ladies and gentlemen, new prosecutors have a tendency to phrase a question wrong. The correct phraseology for the question will be X,["] and just let them do it. I mean, that's just so you can say, "Hey, he didn't phrase it right."

Appellant's counsel moved for a mistrial arguing the question was improper and that no instruction could cure the error. The trial court found the question was so prejudicial that a jury instruction would be insufficient to remove the potential harm to appellant. Accordingly, the court granted the mistrial.

The State elected to re-try appellant. In response, appellant filed a special plea in bar in which he claimed that a subsequent prosecution for the same offense was barred by the double jeopardy clauses of the United States and Texas Constitutions. The trial court denied the special plea, and appellant pleaded guilty to the offense.

## ANALYSIS

■ In his sole point of error, appellant claims the trial court erred in denying his plea in bar. Specifically, appellant argues that his subsequent prosecution was barred by the double jeopardy clauses of the United States and Texas Constitutions because his first prosecution ended in a mistrial deliberately or recklessly caused by the prosecutor. *See* U.S. CONST. amend. V, TEX. CONST. art. I, § 14, TEX.CODE CRIM. PROC. ANN. art. 1.10 (Vernon 1993). Both parties agree this appeal is controlled by the recent Court of Criminal Appeals decision in *Bauder v. State,* 921 S.W.2d 696 (Tex.Crim.App.1996). In *Bauder,* the Court found that Article I, Section 14 of the Texas Constitution provides greater protection against double jeopardy than the Fifth Amendment to the United States Constitution. *Id.* at 698. Specifically, the Court held that where a defendant contends a motion for mistrial was intentionally provoked by the prosecution thereby constitutionally barring a subsequent trial, a two-step analysis must be followed. *See id.* First, we must determine whether the mistrial was properly granted.[1] Second, if the mistrial was properly granted, we must determine whether the mistrial was made necessary by events of the prosecutor's own "deliberate or reckless doing." *Id.* at 699.

■ At the outset we note, as did the Court of Criminal Appeals, that a mistrial is an extreme remedy for prejudicial events during the trial process. *Id.* at 698. Even when a prosecutor intentionally elicits testimony or produces other evidence before a jury which is excludable at the defendant's option, the law prefers that the trial continue.

---

1. The Court found that the first step of the analysis is necessary because a prosecutor is not accountable for a mistrial if the trial judge "need not have granted the defendant's motion." *Id.* at 699. This prong of the test is troubling because it puts this Court in the awkward position of second-guessing the trial court's decision to grant a mistrial. We recognize that many times, because of concern for an accused's right to a fair trial, a trial court will err on the side of caution and grant a mistrial. Given the various considerations which factor into making this decision, many of which cannot be reflected in the record, we are not convinced an appellate court is in the proper position to determine whether the mistrial was "properly granted." As we read *Bauder,* however, we are compelled to make such a determination.

*Id.* Therefore, mistrials should be granted only when an objectionable event is so emotionally inflammatory that curative instructions are not likely to prevent the jury from being unfairly prejudiced against the defendant. *Id.* Because curative instructions are presumed efficacious to withdraw from jury consideration almost any evidence or argument which is objectionable, trial conditions must be extreme before a mistrial is warranted. *Id.* This presumption may be applicable even where the instruction follows a violation of a motion in limine. *Lynn v. State,* 860 S.W.2d 599, 604–05 (Tex.App.—Corpus Christi 1993, pet. ref'd).

 In determining whether a jury instruction is sufficient to cure prejudice arising from an improper question, the facts of each particular case must be noted. *Gonzales v. State,* 685 S.W.2d 47, 49 (Tex.Crim. App.1985). In the present case, appellant relied heavily upon his scientific knowledge and experience. On direct examination, he testified that he was a biomedical engineer at the National Aeronautics & Space Administration ("NASA"). He also stated that he was "vaguely" familiar with how the intoxilyzer machine works and indicated he was familiar with the technology behind it. He explained, over the State's objection, that he declined to take the intoxilyzer test because, based on this scientific knowledge and experience, he felt there was a high probability that the intoxilyzer would register a false positive.

In addition to considering the specific facts of the present case, we find guidance from a myriad of cases which have dealt with improper references to defendants' prior bad acts. In *Kemp v. State,* 846 S.W.2d 289, 308 (Tex.Crim.App.1992), *cert. denied,* 508 U.S. 918, 113 S.Ct. 2361, 124 L.Ed.2d 268 (1993), the Court found that a prosecutor's improper reference to extraneous offenses for which the accused was convicted was curable by an instruction to disregard. In *Moody v. State,* 827 S.W.2d 875, 890 (Tex.Crim.App.1992), the Court found that any potential error which may have resulted from a police officer's testimony that he "pulled the [defendant's]

arrest jacket" during his investigation, was cured by an instruction to disregard. In *Campos v. State,* 589 S.W.2d 424, 427–28 (Tex.Crim.App.1979), the Court found a witness' testimony that the accused was arrested and jailed for an extraneous offense was cured by a jury instruction. In *Barney v. State,* 698 S.W.2d 114, 124–25 (Tex.Crim.App. 1985), the Court found the testimony that the victim did not like the defendant because "he was an ex-con" was cured by an instruction to disregard. In *Aliff v. State,* 627 S.W.2d 166, 172 (Tex.Crim.App.1982), the Court found a jury instruction was sufficient to cure error after the State's witness testified that he had "talked with [the defendant's] Houston County Probation Officer."

In each of the above cases, instructions to disregard were held to cure improper references to evidence which, in our opinion, was of greater prejudicial effect than the prosecutor's statement in the instant case. In the above cases, juries were instructed to disregard evidence that the defendants were arrested, convicted and even jailed for extraneous offenses. In the present case, the prosecutor limited his inquiry to whether appellant had previously taken an intoxilyzer test. While this question could have led the jury to infer appellant had previously been arrested for driving while intoxicated, that possibility, in itself, does not lead us to the unavoidable conclusion that a mistral was necessary. Given appellant's testimony in the present case, and the context in which the prosecutor's question was asked, we find the trial court could have instructed the jury that the question was improperly phrased and to disregard the question along with any inferences arising therefrom. At that point, if it felt obliged, the trial court could have allowed the prosecutor to rephrase and then ask the question again.[2] As was stated in *Bauder,* "our system presumes that judicial admonishments to the jury are efficacious." 921 S.W.2d at 698. After carefully examining the record, we do not believe the trial conditions in the present case were so "ex-

---

2. The record indicates that after the jury was excused, the State offered numerous versions of

the disputed question which the trial court agreed were properly phrased.

treme" as to warrant a mistrial.[3] *See id.*

Because we find the trial court need not have granted appellant's motion for mistrial, appellant's subsequent prosecution was not barred by double jeopardy. Appellant's point of error is overruled, and the judgment of the trial court is affirmed.

---

**3.** We recognize that our conclusion in this case has the potential to discourage trial courts from granting mistrials. This is not our intention. Undoubtedly, factual scenarios exist in which a mistrial is not only preferable, but constitutionally required. As noted earlier, in determining whether a jury instruction is sufficient to cure prejudice arising from an improper question, the facts of each particular case must be analyzed. *Gonzales,* 685 S.W.2d at 49. Our conclusion that a mistrial was improperly granted in this case is limited to the narrow set of facts presented for our review.