Affirmed and Opinion filed December 9, 2003















Affirmed and
Opinion filed December 9, 2003.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-02-00534-CR

____________

 

HERMILIO HERRERO, JR., Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 

____________________________________________

 

On Appeal from
the 179th District Court

Harris County, Texas

Trial Court
Cause No. 903,122

 

____________________________________________

 

O P I N I O
N

 class=Section2>

            Appellant Hermilio
Herrero, Jr. appeals his murder conviction, arguing
(1) the evidence is insufficient to establish the corpus delicti
of murder independent of appellant’s extrajudicial confession; (2)–(3) the
evidence is legally and factually insufficient to support his conviction; and
(4) the trial court abused its discretion when it denied appellant’s motion for
mistrial following a witness’s statement that he was promised protection from
appellant’s death threat in exchange for his testimony.  We affirm.

 








I.  Factual and Procedural
Background

            On January 9, 1995, Albert
Guajardo’s dead body was discovered inside a rolled carpet, which was wrapped
in plastic, tied with a rope, and left on a street near a ditch.  Guajardo’s wife told police she had last seen
her husband approximately four days earlier when he left the house around 7:00 a.m. with a man named Freddie
Hernandez.[1]  According to her testimony, Hernandez and
appellant, whom she referred to as “Millie,” came to the Guajardo home the
previous afternoon; Albert Guajardo left with them briefly and then returned
home.  Guajardo’s wife provided police
with descriptions of both appellant and Hernandez during the investigation.  Detective Curtis Brown from the Harris County
Sheriff’s Department attempted to interview Hernandez; however, he refused to
answer questions.  Appellant agreed to
answer questions and to a search of his home. 
The search did not produce any evidence of the crime.

            Approximately
five years later, Jesse Moreno contacted Kelly Siegler,
an assistant district attorney with the Harris County District Attorney’s
Office.  Moreno claimed he
had information about the case.  Moreno had been
in a Beaumont federal
prison with appellant and testified that appellant told him and other inmates
that appellant killed Guajardo because Guajardo owed appellant money for
drugs.  Rafael Dominguez, also a prison
inmate, contacted Siegler with similar information,
claiming appellant had bragged about killing Guajardo to a group of inmates in
the recreation yard on a separate occasion. 
Appellant was then charged by indictment with Guajardo’s murder.[2]  See
Tex. Pen. Code Ann. § 19.02 (Vernon
1994).  A jury found appellant guilty and
the trial court sentenced him to life imprisonment in the Texas Department of
Criminal Justice, Institutional Division and assessed a $10,000 fine.  

II.  Issues Presented

            Appellant
presents the following issues for review:

(1)       Is
the evidence sufficient to establish the corpus delicti
of murder independent of appellant’s extrajudicial confession?

            (2)       Is the
evidence legally sufficient to support appellant’s murder conviction?

            (3)       Is
the evidence factually sufficient to support appellant’s murder conviction?

            (4)       Was
appellant entitled to a mistrial because a witness improperly testified that he
was promised protection from appellant’s death threat in exchange for his
testimony?

 

III. 
Analysis and Discussion

 

            A.        Is the evidence sufficient to establish
the corpus delicti of murder independent of
appellant’s extrajudicial confession?

 

            In his second issue, appellant
contends that his extrajudicial confession alone is insufficient to establish
the corpus delicti of murder absent physical evidence
linking him to the crime.

            Appellant is correct that an
extrajudicial confession, standing alone, is insufficient to support a
conviction without other evidence showing that a crime has in fact been
committed.  See Salazar v. State, 86 S.W.3d 640, 644 (Tex. Crim. App. 2002). 
Appellant argues that the evidence must demonstrate that he was the
person who committed the murder. 
However, the identity of the perpetrator of the crime is not an element
of the corpus delicti; the inquiry focuses only on
the harm brought about by the criminal conduct of some person.  See id.  The purpose of the corroboration requirement
is to ensure that a person confessing to a crime is not convicted without
independent evidence that the crime actually occurred.  Id.  Therefore, the corpus delicti
rule is satisfied if some evidence exists outside of the extrajudicial
confession which, considered alone or in connection with the confession, shows
that the crime actually occurred.  Id. at 645.

            The corpus delicti
of murder is established by a showing of (a) the death of a human being (b)
caused by the criminal act of another.  Fisher v. State, 851 S.W.2d 298, 303
(Tex. Crim. App. 1993).  In this case, police were notified when
residents partially unrolled a carpet lying on the side of the road and
discovered human feet.  When police
arrived, they opened the carpet to find a man’s body laying face down.  Police identified the victim as Albert
Guajardo through fingerprint identification. 
During her testimony, Guajardo’s wife identified a photo of the victim
from the medical examiner’s office as Guajardo. 
Dr. Dwayne Wolf from the Harris County Medical Examiner’s Office
testified that the autopsy report indicated the victim suffered multiple
lacerations on his scalp as well as a deep wound on the neck caused by a sharp
object.  He stated that the victim’s neck
was cut to the vertebral column, resulting in rapid death.  In addition, Dr. Wolf testified that the
autopsy report showed the victim had bruises on his back consistent with a
round, flat object.  This testimony
provides sufficient evidence to establish the corpus delicti
of murder.  See Emery v. State, 881 S.W.2d 702, 705 (Tex. Crim.
App. 1994) (finding the State offered independent evidence of corpus delicti of murder by proving identity of body and that
cause of death was stabbing); Hammond v.
State, 942 S.W.2d 703, 707 (Tex. App.—Houston [14th Dist.] 1997, no pet.)
(holding corpus delicti of murder met when medical
examiner proved identity of body and that cause of death was fatal bullet wounds).  Accordingly, we overrule appellant’s second
issue.  

            B.        Is the evidence legally sufficient to
support appellant’s murder conviction?

 

            In his first issue, appellant
contends the evidence is legally insufficient to support his murder conviction
because (1) the State presented no physical evidence linking appellant to the
crime; (2) the testimony by Moreno and Dominguez regarding appellant’s
confession is factually inconsistent with other testimony; (3) appellant and
his wife cooperated with authorities; and (4) evidence exists to suggest
someone else committed the crime.

            In evaluating a legal-sufficiency
challenge, we view the evidence in the light most favorable to the
verdict.  Wesbrook v. State, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000). 
The issue on appeal is not whether we, as a court, believe the State’s
evidence or believe that appellant’s evidence outweighs the State’s evidence.  Wicker v. State, 667 S.W.2d 137, 143 (Tex.
Crim. App. 1984). 
The verdict may not be overturned unless it is irrational or unsupported
by proof beyond a reasonable doubt. Matson
v. State, 819 S.W.2d 839, 846 (Tex. Crim. App.
1991).  The jury, as the trier of fact, “is the sole judge of the credibility of the
witnesses and of the strength of the evidence.”  Fuentes v. State, 991 S.W.2d
267, 271 (Tex. Crim. App. 1999).  The jury may choose to believe or disbelieve
any portion of the witnesses’ testimony.  Sharp v. State, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986). 
When faced with conflicting evidence, we presume the trier
of fact resolved conflicts in favor of the prevailing party.  Turro v. State, 867 S.W.2d 43, 47 (Tex. Crim. App. 1993). 
Therefore, if any rational trier of fact could
have found the essential elements of the crime beyond a reasonable doubt, we
must affirm.  McDuff v. State,
939 S.W.2d 607, 614 (Tex. Crim. App. 1997).  The question is not whether a rational jury
could have entertained a reasonable doubt of guilt, but whether it necessarily
would have done so.  Swearingen v. State, 101 S.W.3d 89, 96 (Tex. Crim. App. 2003).

            Under
section 19.02 of the Texas Penal Code, as it applies in this case, a person
commits the offense of murder when he either (1) intentionally or knowingly
causes the death of another; or (2) intends to cause serious bodily injury and
commits an act clearly dangerous to human life that causes the death of
another.  See Tex. Pen. Code Ann.
§ 19.02(b)(1)–(2). Appellant contends the evidence is legally insufficient to
support his conviction because the State failed to produce physical evidence
linking him to the crime.  Appellant
claims the confessions about which Moreno and
Dominguez testified are the only evidence connecting him to Guajardo’s
murder.  Moreno and
Dominguez testified to separate conversations with appellant while at the Beaumont federal
prison in 1999 and 2000 respectively.  In
these conversations, each stated that appellant recounted the events leading up
to Guajardo’s murder.  They testified
that appellant said Guajardo owed him money for drugs and was not willing to pay.  According to their testimony, appellant saw
Guajardo at a night club and convinced him to leave with him.  The two men, and an unnamed third person, got
in a van.  Appellant and Guajardo
allegedly argued about the money, and appellant began choking Guajardo.  According to their testimony, appellant then
pulled a knife and slit Guajardo’s throat. 
Appellant told Moreno and
Dominguez that when he saw Guajardo was still alive, he got a hammer and hit
him until he killed him, and then disposed of the body by rolling it up in a
carpet.  

            An extrajudicial confession is
sufficient to establish the perpetrator’s identity.  See
Emery, 881 S.W.2d at 706 (holding three extrajudicial confessions
sufficient to support finding that appellant committed the offense despite lack
of scientific evidence).  The jury heard
accounts of appellant’s confession from both Moreno and
Dominguez.  Details within the accounts,
beyond those which Moreno admitted
to hearing about prior to the confession,[3] were
consistent with evidence from other sources. 
Both Moreno and
Dominguez testified that appellant said he hit Guajardo with a hammer.  The medical evidence showed that some of
Guajardo’s injuries were consistent with a round, flat object similar to the
head of a hammer.  In addition, Moreno and
Dominguez stated that appellant told them Guajardo was sitting in the front
seat when appellant slit his throat from behind.  Detective Brown testified that, while
examining the body at the scene of its discovery, he noted blood did not appear
to go beyond Guajardo’s waistline, indicating he was probably cut while in a
seated position.  After reviewing the
evidence, we conclude that a rational trier of fact
could have found the essential elements of the crime beyond a reasonable
doubt.     

            Appellant argues that the testimony
of Moreno and
Dominguez regarding appellant’s confession is factually inconsistent with other
testimony, thereby rendering the evidence insufficient for conviction.  Specifically, appellant contends the
following facts are inconsistent with testimony from Moreno and Dominguez: (1)
appellant told them he met Guajardo at a night club, yet Guajardo’s wife
testified that he was not dressed for a night club when he left the house that
morning; (2) appellant said he placed Guajardo’s dead body by a dumpster, yet
other testimony indicated the body was not found by a dumpster but in an area
commonly used for dumping; and (3) appellant indicated he beat Guajardo in the
head with a hammer because Guajardo was still alive after appellant cut his
throat, yet the medical examiner testified that Guajardo would have lived for a
maximum of one minute and would not have made “significant, purposeful
movement” under those circumstances. 
Appellant also raises the following additional inconsistencies in Moreno’s
testimony: (1) appellant stated he first choked Guajardo, yet the medical
evidence does not indicate strangulation, and (2) appellant said Guajardo’s
friend drove Guajardo’s vehicle home from the night club, yet Guajardo’s wife
recalls having the keys to the vehicle that day.  

            To the extent the testimony is
inconsistent, the jury as the trier of fact had the
ultimate authority to determine the credibility of witnesses and the weight to
be given to their testimony.  See Tex.
Code Crim. Proc. Ann. art. 38.04 (Vernon 1979); Garcia v. State, 919 S.W.2d 370, 382 n.6
(Tex. Crim. App. 1996) (per curiam).  Any inconsistencies in the testimony should
be resolved in favor of the jury’s verdict in a legal-sufficiency review.  Moreno v. State, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988). 
Therefore, we conclude the inconsistencies cited by appellant do not
render the evidence legally insufficient.      


            Finally, appellant asserts that the
evidence is not legally sufficient to support his conviction because he and his
wife cooperated with authorities, whereas Hernandez refused to speak to the
police and some facts point to Hernandez as the perpetrator.  Appellant’s argument appears to contest the
fact that the jury rejected an alternative hypothesis, namely that Hernandez,
not appellant, committed the offense. 
Appellant bases this contention on several grounds in addition to
Hernandez’s refusal to speak with authorities: 
(1) the fact that Guajardo never expressed fear of appellant; (2)
Guajardo was last seen alive in Hernandez’s company; and (3) Hernandez often
worked for his father laying carpet.  The
State’s failure to disprove a reasonable alternative hypothesis does not render
the evidence legally insufficient.  Wilson v. State, 7 S.W.3d 136, 141 (Tex. Crim. App. 1999). 
Therefore, appellant’s contention in this regard lacks merit.

            Having reviewed all of appellant’s
contentions, we conclude the evidence is legally sufficient to sustain
appellant’s murder conviction. 
Accordingly, we overrule appellant’s first issue.     

            C.        Is the evidence factually sufficient to
support appellant’s murder conviction?

 

            In his
third issue, appellant challenges the factual sufficiency of the evidence to
support the jury’s verdict.  When
evaluating a challenge to the factual sufficiency of the evidence, we view all
the evidence without the prism of “in the light most favorable to the
prosecution” and set aside the verdict only if it is “so contrary to the
overwhelming weight of the evidence as to be clearly wrong and unjust.”  Johnson v. State, 23 S.W.3d 1, 6–7 (Tex. Crim. App. 2000). This concept embraces both “formulations
utilized in civil jurisprudence, i.e., that evidence can be factually
insufficient if (1) it is so weak as to be clearly wrong and manifestly unjust
or (2) the adverse finding is against the great weight and preponderance of the
available evidence.”  Id. at
11.  Under this second formulation, the
court essentially compares the evidence which tends to prove the existence of a
fact with the evidence that tends to disprove that fact.  Jones
v. State, 944 S.W.2d 642, 647 (Tex. Crim. App.
1996).  In conducting the
factual-sufficiency review, we must employ appropriate deference so that we do
not substitute our judgment for that of the fact finder.  Id. at
648.    

            When reviewing a factual-sufficiency
challenge, we must discuss the evidence appellant claims is most important in
allegedly undermining the jury’s verdict. 
Sims v. State, 99 S.W.3d 600,
603 (Tex. Crim. App. 2003). 
Here, appellant cites the same reasons for factual insufficiency as
discussed under legal sufficiency, namely (1) inconsistencies in the testimony
of Moreno and Dominguez when compared to that of other witnesses and to the
medical evidence; (2) the lack of physical evidence linking appellant to the
crime; (3) the fact that he and his wife cooperated with authorities; and (4)
the existence of facts pointing to Hernandez as the perpetrator of the
crime.  As additional support for his
factual-sufficiency claim, appellant characterizes Moreno as a
“professional witness” because he testified previously for the same
prosecutor.    

            The jury is the sole judge of the
facts, the credibility of the witnesses, and the weight to be given the
evidence.  Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim.
App. 1997).  Therefore, the jury may
believe or disbelieve all or part of any witness’s testimony.  See
Jones v. State, 984 S.W.2d 254, 258 (Tex. Crim.
App. 1998).  A factual-sufficiency
challenge will not necessarily be sustained simply because the record contains
conflicting evidence upon which the fact finder could have reached a different
conclusion.  See Santellan v. State, 939 S.W.2d 155,
164 (Tex. Crim. App. 1997).  A reviewing court may disagree with the fact
finder’s resolution of conflicting evidence only when it is necessary to
prevent manifest injustice.  See id. at 164–65.  A jury decision is not manifestly unjust
merely because the jury resolved conflicting views of evidence in favor of the
State.  See Cain, 958 S.W.2d at 410. 

            In this case, the jury apparently
chose to believe that appellant told Moreno and
Dominguez he killed Guajardo and that he recounted the details of the crime,
despite any arguable inconsistencies in the testimony and appellant’s
contention that the State lacked physical evidence.  See Torres v. State, 92
S.W.3d 911, 916–17 (Tex. App.—Houston [14th
Dist.] 2002, no pet.) (overruling appellant’s factual-sufficiency challenge to
murder conviction despite lack of physical evidence when jury chose to believe
statements made by appellant to others). 
The jury evidently did so despite hearing testimony that appellant
cooperated with authorities during the initial investigation and after learning
that Moreno had
testified for the prosecution in a prior case. 
After reviewing the evidence without “the prism of in the light most
favorable to the prosecution,” we cannot conclude that the verdict is so
contrary to the overwhelming weight of the evidence as to be clearly wrong and
unjust. 

            Appellant’s claim that some facts
point to Hernandez, rather than appellant, as the perpetrator of the crime does
not mean the evidence is factually insufficient.  The existence of alternative reasonable
hypotheses may be relevant to, but is not determinative in, a
factual-sufficiency review.  Wilson v. State, 7 S.W.3d 136, 141 (Tex. Crim. App. 1999). 
The facts upon which appellant bases the hypothesis that Hernandez
committed the crime are tenuous at best. 
Although appellant points to the fact that Guajardo was last seen alive
with Hernandez, Detective Brown testified that Guajardo’s wife gave him
descriptions of two men, Hernandez and “Millie,” whom she identified in court
as appellant.  As additional support for
his claim, appellant states that Hernandez often worked for his father laying
carpet; however, this statement is not accurate.  The testimony on which appellant relies
indicates only that Hernandez’s father installed carpet in Guajardo’s home,
with no mention of Hernandez assisting him. 
The only other evidence that appellant offers to show Hernandez may have
committed the crime is that Guajardo never expressed any fear of appellant and
that appellant cooperated with authorities whereas Hernandez did not.  These statements are not enough for this court
to conclude that the evidence is factually insufficient to support the
appellant’s conviction.  By contrast, the
jury heard testimony from two witnesses to whom appellant recounted the details
of Guajardo’s murder and admitted to killing him. See Wilson, 7 S.W.3d
at 141–42.  Accordingly, we overrule
appellant’s third issue.




 








            D.        Was appellant entitled to a mistrial
because a witness improperly testified that he was promised protection from
appellant’s death threat in exchange for his testimony?

 

            In his fourth issue, appellant
argues that the trial court abused its discretion when it denied him a mistrial
following Dominguez’s statement before the jury that he was promised protection
from appellant’s death threat in exchange for his testimony. 

            We review a trial court’s denial of
a motion for mistrial under an abuse-of-discretion standard.  See
Ladd v. State, 3 S.W.3d 547, 567 (Tex. Crim. App.
1999).  Mistrials are an extreme remedy
for curing prejudice occurring during trial. 
Bauder v. State, 921 S.W.2d 696, 698 (Tex. Crim. App. 1996).  They
ought to be exceedingly uncommon and employed only when less drastic remedies
are inadequate to the task of removing residual prejudice.  Id.  A mistrial is only required when the
impropriety is clearly calculated to inflame the minds of the jury and is of
such a character as to suggest the impossibility of withdrawing the impression
produced on the minds of the jury.  Hinojosa v. State, 4 S.W.3d 240, 253
(Tex. Crim. App. 1999). 

            On direct examination, Dominguez
stated that he was promised protection against appellant’s death threat in
exchange for his testimony in the case. 
Defense counsel immediately requested the attorneys approach the bench
and the trial court excused the jury. 
Outside the jury’s presence, the prosecutor stated that she did not anticipate
the answer, but that the witness was telling the truth.  Defense counsel objected that the statement
violated the motion in limine.  Just prior to Dominguez taking the witness
stand, the parties had agreed not to broach the subject of appellant’s alleged
death threats without first approaching the bench.  The trial court agreed to instruct the jury
and offered defense counsel the option of writing out the instruction.  With the jury still removed, defense counsel
questioned the witness further about his knowledge of a death threat and the
promise he received from the prosecution. 
After additional discussion between the trial court and counsel, the
court called the jury in and instructed them to disregard the last response by
the witness.  The trial court then
inquired whether defense counsel wished any additional instruction.  Defense counsel moved for a mistrial, and the
trial court denied the motion.        

            Appellant contends Dominguez’s
response improperly injected an extraneous offense in violation of the motion
in limine and was calculated to inflame the
jury.  A prompt instruction to disregard
will ordinarily cure error associated with an improper question and answer
regarding extraneous offenses.  See Ovalle v.
State, 13 S.W.3d 774, 783 (Tex. Crim. App. 2000).  
Because curative instructions are presumed effective to withdraw from
jury consideration almost any evidence or argument that is objectionable, trial
conditions must be extreme before a mistrial is warranted.  Bauder, 921 S.W.2d at 700. 
This presumption may apply even where the instruction follows violation
of an order in limine.  Janney v. State,
938 S.W.2d 770, 773 (Tex. App.—Houston [14th Dist.] 1997, no pet.).  

            The improper statement was not of
such a character as to suggest the impossibility of withdrawing the impression
produced on the minds of the jury.  See Martinez v. State, 844 S.W.2d 279,
284 (Tex. App.—San Antonio 1992, pet. ref’d) (holding
instruction cured error when police officer testified that appellant had
threatened intended victim); see also
Whitaker v. State, 977 S.W.2d 595, 600 (Tex. Crim.
App. 1998) (finding instruction cured error when witness testified that
appellant was physically and mentally abusive towards her); Paster v. State, 701 S.W.2d 843, 848 (Tex. Crim.
App. 1985) (concluding instruction rendered testimony about appellant’s alleged
involvement in two extraneous murders harmless).  Nor were trial conditions so extreme as to
warrant a mistrial.  Before this
testimony, the jury heard similar testimony from Moreno concerning
his fear that appellant would have him stabbed if he knew Moreno cooperated
with the State in any investigation.[4]  Like Dominguez, Moreno also
confirmed that the prosecution offered him protective custody, stating, without
objection, that “I told you that the reason I’m calling you is because I need
your help, because I was going to get killed regardless.  So, I mean, it’s my only self-defense I got
against this man.”  Therefore, we
conclude the trial court did not abuse its discretion when it denied the motion
for mistrial.  Accordingly, we overrule
appellant’s fourth issue.

IV.  Conclusion

            The evidence suffices to prove the
corpus delicti of murder.  Likewise, the evidence is legally and
factually sufficient to sustain appellant’s murder conviction.  Lastly, the trial court did not abuse its
discretion when it denied appellant’s motion for mistrial following Dominguez’s
statement concerning appellant’s death threat. 
Having overruled all of appellant’s issues, we affirm the trial court’s
judgment.

 

 

                                                                        /s/        Kem Thompson Frost

                                                                                    Justice

 

Judgment rendered and Opinion filed
December 9, 2003.

Panel consists of Justices Yates,
Hudson, and Frost.

Publish — Tex. R. App. P. 47.2(b).

 

 











            [1]  Detective Curtis Brown from the Harris County
Sheriff’s Department testified that he questioned Guajardo’s wife about “[b]oth individuals that he was last seen with.”  However, according to her testimony, Guajardo
left home with only Hernandez on the morning of January
 5, 1995.





            [2]  The indictment included an enhancement
paragraph, which referenced appellant’s 1989 conviction for aggravated
assault.  The trial court found the
enhancement paragraph true when assessing punishment. 





            [3]  When questioned about details he had heard
prior to the conversation with appellant, Moreno testified that he was aware
that Guajardo’s body was rolled in a carpet and that his throat was slit.





            [4]  In explaining why he showed appellant a fake
pre-sentence investigation (P.S.I.), Moreno stated:

 

            Q:         Why
did you do that?

            A:         Why
did I show him that P.S.I.?  Because when
they find that you’re hot — we call it hot — they make you check in or you get
hit, so I didn’t want to get —

            . .
.

            Q:         Why
did you worry about being hot to this man?

            A:         Because
he would have had me hit or checked in.

            Q:         What
does that mean, he, this defendant, would have had you hit?

            A:         Stabbed.